STATE BOARD OF TAX APPEALS.

ESBECO DISTILLING COMPANY, PETITIONER, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Decided September 9, 1941.

For the petitioner, *William F. Jordan.*

For the respondent, *William H. Osborne, Jr.*

QUINN, President.   Petitioner appeals from an assessment by the Alcoholic Beverage Tax Division of the State Tax Department, of a sale or delivery of certain alcoholic beverages, made under circumstances hereinafter related, and in pursuance of· *N. J. S. A.* 54:43-1.   It is not clear whether petitioner's appeal is based upon the theory that the transaction under review did not constitute a sale or delivery in this

state, or whether it is contended that the disposition of the beverages is tax free, as intended for resale and consumption outside the state, under *N. J. S. A.* 54:43-2. The exclusionary provisions contained in the section last mentioned are available only in favor of a licensed manufacturer or licensed export wholesaler. Since petitioner is not in either of these categories, but only a licensed wholesaler, it cannot avail itself of that section, and our attention must be confined hereinafter to the question as to whether the transaction was or was not a "sale or delivery within this state of alcoholic beverages intended ultimately for consumption." If it was, it is expressly subject to tax under *N. J. S. A.* 54:43-1.

On September 8th, 1939, Field's Retail Liquor Store, of Schenectady, New York, hereinafter designated as Field's, wrote to petitioner, at its New York office, expressing an interest in purchasing five barrels of rye whiskey of a type previously purchased, to be delivered bottled and labeled. Petitioner replied September 11th, 1939, to the effect that it could not supply the rye, but could possibly supply bourbon of the quantity requested. On September 15th, 1939, it wired Field's, as follows: "Ours eleventh have option expiring tomorrow also received sample quality satisfactory wire if wanted;" to which Field's wired: "We can use five barrels bourbon four years old." The same day petitioner confirmed the exchange of wires, adding, "We will try and order five barrels of bourbon for you, if we can get it."

On September 21st, 1939, petitioner wrote Field's that it had "finally succeeded in obtaining the 5 Bbls. October '35 Continental Bourbon, certificate No. 8648, barrels 525273/7," and that it had the warehouse receipt. There then followed a request for information as to the type of label desired by the purchaser, so that the form could be officially approved and the goods bottled. Price was described as "a little less than the 5 Bbls of Old Mac Rye" (previously sold).

On October 5th, 1939, petitioner advised that the goods would be shipped through Henry Kelley & Sons, Inc., of New York. This, it appears from the proof, was necessary because of the expiration of petitioner's New York license on October 1st, 1939.

On October 11th, 1939, petitioner wrote to Lehigh Warehouse and Transportation Co., Inc., in Elizabeth, New Jersey, enclosing warehouse receipt for the liquor in question, situated in Philadelphia, and requested that the Lehigh company order the merchandise tax-paid and delivered to its warehouse for bottling in bond under a label attached, and thereafter to ship it to Field's, freight collect. Finally, it advised, "Please forward your bills covering the charges incurred," and, "the transit receipt should show that shipment is being made by Henry Kelley & Sons, Inc."

It is conceded by petitioner that the Lehigh Company did obtain the goods from Philadelphia, bottled them in bond, and shipped them from Elizabeth to Schenectady, freight collect; that thereafter petitioner billed Henry Kelley & Sons, Inc., and the latter, in turn, billed Field's at a higher price for the beverages. The cost of the bottling was paid by petitioner to the Lehigh Company, as billed. Petitioner did not bill Field's for merchandise, services, or charges, nor was any payment ever made by Field's to petitioner.

Petitioner contends that the foregoing facts establish a fully consummated sale to Field's prior to the removal of the goods from Philadelphia to Elizabeth; that what it, petitioner, did thereafter, was as agent of Field's, and at its risk, and that Field's was not taxable under the New Jersey laws, in the premises. It appears to this board, however, (1) that title remained in petitioner until the goods were shipped at Elizabeth, and (2) that if, under the law of sales, the property in the merchandise passed to Field's at some earlier point of time, there was nevertheless a taxable disposition of the alcoholic beverages in this state.

(1) We regard it as clear that Henry Kelley & Sons, Inc., never had title. Its intervention in the transaction was accepted by all parties as a convenient means for circumventing petitioner's lack of a New York license, and it was permitted to earn a fee for lending its name. The deal was always one between Esbeco and Field's. We regard it as inescapable, furthermore, that Field's was buying bottled, labeled, tax-paid liquor, not five barrels of liquor in bulk, and that until petitioner had had the beverages reduced to

the deliverable state contemplated by the parties, it retained title. Under *N. J. S. A.* 46 :30-25, unless a different intention appears, "where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done." That rule of construction is plainly applicable here. Title passed, and the sale was consummated at Elizabeth, when the goods were put on board, freight collect, with the buyer's acquiescence.

(2) Whether or not the foregoing views as to the passage of title, in a technical sense, are sound, there was a taxable "sale or delivery," under the act. Under *N. J. S. A.* 54 :41-2, containing definitions under the Alcoholic Beverage Tax Act:

" 'Sale' means and includes, in addition to its ordinary meaning, any exchange, gift, loss, theft, *or other disposition."* (Italics supplied.)

We regard it as plain that every "disposition," in a broad and literal sense, of alcoholic beverages, in this state, is intended by the legislature for taxation under the act, unless specifically excluded from taxation under one of the exclusionary provisions expressly provided therein. See, *e. g., Schenley Distributors* v. *State Tax Commissioner (State Board,* 1940), 18 *N. J. Mis. R.* 266; 12 *Atl. Rep.* (2*d*) 638. The history of the merchandise here in question during its physical presence in this state, was clearly a disposition or delivery of it, whether or not a legal sale transpired here. Petitioner points out no applicable exclusionary provision. The transaction was, therefore, for either of the reasons stated, taxable, and the assessment is affirmed. Appeal dismissed.